IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02618-PAB

JOYCE SERRANO,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

# ORDER

This matter is before the Court on plaintiff Joyce Serrano's complaint [Docket No. 1] filed on September 22, 2014. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

On August 19, 2010, plaintiff applied for disability insurance benefits under Title II of the Act. R. at 15. Plaintiff alleged that she had been disabled beginning March 10, 2010. *Id.* After an initial administrative denial of her claim, plaintiff appeared at a hearing conducted by an Administrative Law Judge ("ALJ") on November 19, 2012. *Id.* On December 26, 2012, the ALJ denied plaintiff's claim. *Id.* at 25. The ALJ found that plaintiff had the severe impairments of degenerative joint disease, type II diabetes,

peripheral neuropathy, and obesity. *Id.* at 17. The ALJ found that these impairments, alone or in combination, did not meet or medically equal one of the regulations' listed impairments, *id.* at 19, and found that plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with additional limitations. More specifically, [plaintiff] is capable of lifting or carrying up to 10 pounds frequently, lifting or carrying 10 pounds occasionally, standing or walking for 4 hours in an 8-hour workday, and sitting for 6 hours in an 8-hour workday. [Plaintiff] is capable of twisting, climbing, balancing, stooping, crawling, crouching, and kneeling for up to 1/3 of the day. [Plaintiff] is precluded from reaching above shoulder level and she must avoid unprotected heights and concentrated exposure to moving machinery.

*Id.* at 19. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff "is capable of performing past relevant work as a customer service representative," which "does not require the performance of work-related activities precluded by [plaintiff's RFC.]" *Id.* at 24.

The Appeals Council denied plaintiff's request for review of the ALJ's denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the

ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred by failing to assign adequate weight to the

opinion of her treating physician, Dr. Patrick Page, and by not including any manipulative limitations in her RFC. Docket No. 14 at 19. The relevant medical evidence is as follows. Dr. Page's treatment notes document that he saw plaintiff from March 17, 2009 through November 15, 2011. R. at 288, 526. At a "routine clinic follow-up" with Dr. Page on August 19, 2009, plaintiff complained that she had suffered from triggering of the right middle finger for the past year with progressive worsening of pain. R. at 277. Dr. Page arranged an appointment with another provider, Dr. Rooks, for treatment of plaintiff's trigger finger. *Id.* at 278. However, the record does not reflect that plaintiff received further treatment from Dr. Rooks. On March 18, 2010, Dr. Page again noted plaintiff's complaint of trigger finger in her right middle finger, but noted "normal movements of all extremities." *Id.* at 262-63. On December 16, 2010, Dr. Page treated plaintiff for pain and swelling in her shoulders. R. at 500. At this visit, plaintiff reported no wrist or hand pain, *id.*, though Dr. Page ordered an x-ray of her right wrist and referred her for a follow-up examination with an orthopedist. *Id.* at 503. On December 29, 2010, plaintiff was examined by Dr. Mark Luker for her complaints of shoulder pain. *Id.* at 513. Dr. Luker noted that extension of plaintiff's right wrist caused her pain, *id.* at 514, but advised plaintiff that it was not likely that she suffered from a structural or intrinsic shoulder problem and recommended conservative treatment consisting of "soft tissue modalities including physical therapy." *Id.* at 514.

On November 13, 2010, consultative examiner Dr. Bret Barney examined plaintiff and found "significant tenderness over the right second finger over the metacarpophalangeal, proximal interphalangeal and distal interphalangeal joints" and

"limited flexion of that finger." R. at 489. In his functional assessment, Dr. Barney opined that plaintiff could stand and walk up to four hours, could sit up to six hours, and could lift and carry 10 pounds occasionally and frequently, but that plaintiff was limited to "only occasional fingering of the right hand secondary to the osteoarthritis of the second finger." *Id.* at 490.

On June 13, 2011, plaintiff complained to Physician's Assistant Roy Huffstetler that she had suffered from right thumb pain for the previous year that had increased in the preceding few months. R. at 598. Plaintiff stated that when she would hit her thumb on something her pain increased to 10 out of 10. *Id.* PA Huffstetler noted that plaintiff had some tenderness in her right first metacarpophalangeal joint. *Id.* at 598. X-rays revealed no fracture in plaintiff's right wrist, *id.* at 574, and PA Huffstetler recommended that plaintiff wear a wrist splint and take 400 mg of ibuprofen every 6 hours. *Id.* at 599. On November 15, 2011, plaintiff visited Dr. Stephanus Tjan complaining of pain in her right wrist for the previous year. *Id.* at 601. Dr. Tjan noted that plaintiff had edema in her right wrist and the range of motion in her right wrist was limited. *Id.* at 601-02. Dr. Tjan prescribed meloxicam, an anti-inflammatory. *Id.* at 602. At a follow-up visit to Dr. Tjan on December 19, 2011, plaintiff reported that the meloxicam caused her to feel no pain while resting, but that she still suffered exercise-induced right wrist pain that radiated to her upper back. *Id.* at 604. On May 22, 2012, plaintiff reported to Dr. Tjan that she continued to experience right thumb pain which was made worse by stretching. *Id.* at 606. Dr. Tjan diagnosed plaintiff with tendinitis of the right thumb. *Id.*

On October 17, 2012, Dr. Page completed a RFC capacity questionnaire on plaintiff's behalf. R. at 614-618. Dr. Page opined that plaintiff's symptoms would constantly interfere with attention and concentration needed to perform simple work tasks, that she was capable of performing low stress jobs, and that she was capable of walking less than one city block without needing rest or experiencing severe pain. *Id.* at 615-16. Dr. Page further opined that plaintiff was capable of sitting and standing for 15 minutes at one time and for less than two hours in an eight-hour work day, *id.* at 616, that she required a job that permits shifting positions at will between sitting, standing, and walking, *id*, that she would require as many as five unscheduled breaks – of 10-20 minute durations each – during an eight-hour work day, *id.*, that plaintiff can occasionally lift less than 10 pounds but can never lift 10 or more pounds, *id.* at 617, and that she has significant limitations in repetitive reaching, handling, or fingering. *Id.* at 617. Regarding manipulative limitations, Dr. Page opined that plaintiff can perform fine manipulations fewer than 5% of the time during an eight-hour work day with her right hand and approximately 15% of the time during an eight-hour work day with her left hand. *Id.*

The Court first addresses plaintiff's argument that the ALJ erred in failing to include any manipulative limitations in her RFC. The ALJ found that plaintiff was not disabled at step four because she was capable of performing past relevant work as a customer service representative, a position that the VE testified requires "frequent fingering." R. at 24, 56. Although plaintiff bears the burden to make a prima facie showing of disability at step four, the ALJ is required "to make specific findings about

7

the mental and physical demands of the jobs at issue and to evaluate the claimant's ability to meet those demands." *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996).

The ALJ gave Dr. Barney's opinion "great weight" with the exception of his opinion concerning her manipulative limitations.  R. at 23-24.  In rejecting Dr. Barney's opinion that plaintiff is limited to only occasional fingering, the ALJ stated that plaintiff has not reported the severity of her manipulative limitations to her physicians or sought out significant treatment for the condition and that "the clinical findings do not support the manipulative limitations assessed.  *Id.*  Additionally, the ALJ noted that plaintiff is capable of dressing and bathing herself and completes the activities of daily living.  *Id.* at 21.  The ALJ did not specifically discuss Dr. Page's opinion concerning manipulative limitations, but stated that he gave Dr. Page's opinion no weight because it was inconsistent with the treatment notes and with Dr. Barney's assessment.  *Id.* at 23.

The Court finds that the ALJ's finding that there is no evidence of plaintiff's manipulative limitations is not supported by substantial evidence.  The ALJ gave Dr. Barney's opinion great weight and, with respect to plaintiff's ability to sit, stand, and carry, cited Dr. Barney's assessment as a basis for assigning no weight to Dr. Page's contradictory opinions.  R. at 23.  Although the ALJ relied on portions of Dr. Barney's opinion to discount the opinion of Dr. Page, the ALJ dismissed Dr. Barney's opinion concerning manipulative limitations as unsupported by clinical findings.  *Id.* at 23-24. Crucially, the ALJ did not point to any medical evidence that contradicts Dr. Barney's opinion.  Instead, the ALJ relied on an absence of evidence, including plaintiff's failure to report the alleged severity of her symptoms to medical providers and her failure to

seek out significant treatment for her condition. *Id.* This was error. The Tenth Circuit has "repeatedly held that an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (internal quotation and alteration marks omitted).

Moreover, although the ALJ remarked broadly that plaintiff "has not reported the alleged severity" of her manipulative limitations to physicians or "sought out significant treatment" for the condition, R. at 23-24, the ALJ did not discuss any of the instances where plaintiff did report such issues to her medical providers. The record reflects both that plaintiff reported numerous instances of pain to her medical providers[1] and that her providers' examinations corroborated her complaints at least in part.[2] The ALJ's reliance on an absence of medical evidence supporting manipulative limitations, while simultaneously failing to discuss evidence corroborating those limitations, is an independent basis for remand. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (although the ALJ is not "required to discuss every piece of evidence," the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

---

[1]Plaintiff reported thumb pain to both PA Huffstetler and Dr. Tjan, R. at 598, 606, wrist pain to Dr. Tjan and Dr. Luker, *id.* at 604, 514, pain in her middle finger to Dr. Page, *id.* at 277, 261-62, and pain in her "second finger" to Dr. Barney. *Id.* at 489.

[2] *See* R. at 598 (noting "some tenderness to the right 1st MCP"), 601 (noting "right wrist edema" and limited range of motion in right wrist), 278 ("[t]riggering of right middle finger noted"); 489 ("significant tenderness over the right second finger over the metacarpophalangeal, proximal interphalangeal and distal interphalangeal joints").

The Commissioner argues that plaintiff sought only intermittent care and that, when she did seek care, her complaints were inconsistent, ranging from wrist pain, to thumb pain, to pain in her index and middle fingers. Docket No. 17 at 12. But while an ALJ may use intermittent care or inconsistent complaints to judge a claimant's credibility, SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996), an ALJ cannot use those credibility determinations, unaccompanied by any citation to contradictory medical evidence,[3] as a basis to reject an uncontradicted medical source opinion. *Cf. McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*") (quotation and citation omitted) (emphasis in original). Further, the Commissioner's argument that plaintiff's complaints concerning her manipulative limitations were inconsistent was not a basis for the ALJ's opinion. The Court cannot entertain post-hoc justifications for an ALJ's decision. *Robinson*, 366 F.3d at 1084 ("The ALJ's decision should have been

---

[3]The Court notes that another state agency consultant, Dr. Alan Ketelhohn, stated broadly that Dr. Barney's opinions concerning plaintiff's limitations on "lift, stand/walk, balance, climb, reach, handle, finger are inconsistent with unaided gait." R. at 79. The ALJ, however, did not identify Dr. Ketelhohn's opinion with respect to manipulative limitations as a basis for rejecting Dr. Barney's opinion concerning manipulative limitations. To the extent that the ALJ cited Dr. Ketelhohn's opinion, such citation only concerned his opinion about plaintiff's ability to lift, stand, and walk during a work day. *Id.* at 23. Moreover, even if the Court interpreted the ALJ's citations to Dr. Ketelhohn's assessment as specifically affording great weight to and adopting Dr. Ketelhohn's opinion concerning manipulative limitations, the ALJ would still be in error, as the ALJ provided no specific reasons for rejecting Dr. Page's and Dr. Barney's opinions on manipulative limitations in favor of Dr. Ketelhohn's contradictory opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("the ALJ erred in rejecting the treating-physician opinion . . . . in favor of the non-examining, consulting-physician opinion . . . absent a legally sufficient explanation for doing so.").

evaluated based solely on the reasons stated in the decision").

In sum, because the ALJ found that plaintiff was not disabled at step four because she was capable of performing past relevant work that required frequent fingering, and because the ALJ's finding that plaintiff has no manipulative limitations is not supported by substantial evidence, remand is appropriate.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Joyce Serrano was not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DATED March 7, 2016.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge